

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| vs. | § | Criminal Action No.: 3:17-00811-MGL |
| | § | |
| GLENN QUANTA PERNELL; | § | |
| DONALD LEE ROBINSON; | § | |
| ANTONIO DEBOR GOWANS; | § | |
| WHITNEY SAD'E PERNELL; | § | |
| HATTIE F. PERNELL; | § | |
| FATIMA FLESINEARS FORD; | § | |
| SANTERRIO MONTINEZ SMITH; | § | |
| DANTRELL MARKEIS SMITH; | § | |
| TERRENCE VERNON DUNLAP; | § | |
| and JAMES EARL GREEN | § | |

**MEMORANDUM OPINION AND ORDER
DENYING DEFENDANTS' MOTION TO SUPPRESS**

## I.    INTRODUCTION

The Government has charged seventeen Defendants in a fifty-three count superseding indictment involving various drug-related, firearms, and animal-fighting crimes.  Seven of the Defendants have pled guilty to various counts, and are not part of the instant motion.  Pending before the Court is Defendants Glenn Quanta Pernell, Donald Lee Robinson, Antonio Debor Gowans, Whitney Sad'e Pernell, Hattie F. Pernell, Fatima Flesinears Ford, Santerrio Montinez Smith (Santerrio Smith), Dantrell Markeis Smith (Dantrell Smith), Terrence Vernon Dunlap (Dunlap), and James Earl Green's (collectively Defendants) motion to suppress wiretap evidence (motion to suppress).  All Defendants are represented by counsel.  Having carefully considered the

motion, the response, the replies, oral argument, the record, and the applicable law, it is the judgment of the Court Defendants' motion to suppress will be denied.

## II.      FACTUAL AND PROCEDURAL HISTORY

This case arises out of an investigation into drug-related activities in the Columbia, South Carolina area. The factual and procedural history is extensive, and the Court need not recite it in full. Rather, the Court will recite only the facts and history relevant to the motion discussed in this Order.

### A.      Factual Background

The Court determines the following facts by a preponderance of the evidence. *See United States v. Matlock*, 415 U.S. 164, 177 n.14 (1974) ("[T]he controlling burden of proof at suppression hearings should impose no greater burden than proof by a preponderance of the evidence." (citation omitted)); *United States v. Stevenson*, 396 F.3d 538, 541 (4th Cir. 2005) ("In the course of deciding a motion to suppress, the district court may make findings of fact. . . .").

This case stems from an investigation conducted by the Columbia Violent Gang Task Force (CVGTF), a task force led by the Federal Bureau of Investigations and involving municipal, county, state, and federal law enforcement officers. ECF No. 751 at 23. Around 2007, the CVGTF began investigating the Smith Brothers' Neighborhood Based Gang led by Dantrell Smith and Santerrio Smith for drug-related activities. *Id.* at 26. The investigation included controlled drug buys, statements from confidential informants, interviews with cooperating defendants, consensually-recorded telephone conversations, surveillance, pen register and telephone toll records, intelligence from law enforcement officers, and Title III authorized wiretaps from previous investigations. *Id.* at 25-83.

On March 30, 2017, the Government applied for wiretaps on three telephone numbers (Target Phones 1, 2, and 3) for a period of thirty days; the same day, the Court issued an Order (March Order) authorizing interception. ECF No. 751. Dantrell Smith used Target Phone 1, and Santerrio Smith used Target Phones 2 and 3. *Id.* Interception began the following day. ECF Nos. 682 at 2, 750 at 2. The March Order expired on April 29, 2017; interception of Target Phone 1 ceased the same day. ECF No. 750 at 2. Recordings from Target Phone 1 were sealed on May 4, 2017. *Id.* at 38.

On May 8, 2017, the Government applied for and received an order authorizing continued wiretapping of Target Phones 2 and 3, and wiretapping of Target Phones 4 and 5 for a period of thirty days. ECF No. 751-1. Target Phones 4 and 5 were used by a then-unknown male supplier of Dantrell and Santerrio Smith, later identified as Defendant Glenn Quanta Pernell. ECF No. 751-2. Interception under the May, 2017 Order (May Order) began on May 8, 2017. ECF No. 750 at 2. Interception over Target Phones 2 and 3 under the May Order ceased June 6, 2017. *Id.* Recordings of Target Phones 2 and 3 were sealed on June 15, 2017. ECF Nos. 682 at 17, 750 at 42.

On June 6, 2017, the Government applied for and obtained an order (June Order) authorizing continued wiretapping of Target Phones 4 and 5, and wiretapping of Target Phones 6 and 7 for a period of thirty days. ECF No. 751-2. Target Phones 6 and 7 were used by an unknown supplier. *Id.* Interception over all phones ended July 5, 2017. ECF No. 750 at 3.

### B.     Procedural History

On September 6, 2017, the Government filed a one-count indictment against sixteen defendants including nine of the ten Defendants participating in the instant motion and seven defendants who have already pled guilty and are not involved in the motion to suppress. ECF No.

3.  The indictment charged conspiracy to possess with intent to distribute and to distribute cocaine, cocaine base (crack), and heroin.  *Id.*

On December 6, 2017, the Government filed a superseding indictment.  ECF No. 420.  That indictment added James Earl Green to the original sixteen Defendants, and charged fifty-three counts.  *Id.*  Count One charged conspiracy to possess with intent to distribute and to distribute cocaine, crack, and heroin.  *Id.*  Counts Two through Twenty-Seven charged use of a telephone to facilitate conspiracy to distribute, possession with intent to distribute, and distribution of cocaine, crack, and heroin.  *Id.*  Counts Twenty-Eight through Forty-Nine charged possession with intent to distribute and distribution of controlled substances.  *Id.*  Count Fifty charged possession with intent to distribute 500 grams or more of cocaine.  *Id.*  Counts Fifty-One and Fifty-Two charged felon in possession of a firearm or firearms and ammunition.  *Id.*  Count Fifty-Three charged possessing, training, transporting and receiving animals in interstate commerce for the purpose of participating in an animal-fighting venture.  *Id.*

On October 12, 2018, Santerrio Smith filed a motion to suppress seeking to suppress any materials, evidence, or fruits thereof obtained pursuant to the March, 2017, May, 2017, and June, 2017 wiretaps.  ECF No. 682.  Defendants Glenn Quanta Pernell, Donald Lee Robinson, Antonio Debor Gowans, Whitney Sad'e Pernell, Hattie F. Pernell, Fatima Flesinears Ford, Dantrell Smith, Dunlap, and James Earl Green all moved to join the motion to suppress; the Court granted all motions to join.  ECF Nos. 691, 693, 694, 695, 697, 700, 701, 703, 704, 706, 753, 754, 755, 758, 759.  The Government responded to Defendants' motion to suppress on December 6, 2018.  ECF Nos. 750, 751.  Santerrio Smith replied on December 11, 2018.  ECF No. 762.

On December 17, 2018, the Court held a hearing (motion hearing) on Defendants' motion to suppress.  Counsel for the Government, Santerrio Smith, and Dunlap made arguments.  ECF

No. 765. The Government introduced an affidavit from Assistant United States Attorney (AUSA) Nick Bianchi (Bianchi) as an exhibit; Santerrio Smith introduced GPS tracking records for Santerrio Smith for late January, 2017. *See* ECF No. 766.

Following the motion hearing, Santerrio Smith filed a reply regarding issues raised at the motion hearing. ECF No. 767. The Government replied. ECF No. 770. Dunlap also filed a reply to supplement his arguments at the motion hearing. ECF No. 769. The Court, having been fully briefed on the relevant issues, is now prepared to discuss the merits of Defendants' motion to suppress.

## III. STANDARDS OF REVIEW

The Fourth Amendment to the United States Constitution provides in part: "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. Const. amend. IV. The Fourth Amendment's protections "extend[] . . . to the recording of oral statements overheard . . . ." *Katz v. United States*, 389 U.S. 347, 353 (1967). Thus, for the Government to properly wiretap a telephone, it must follow judicial procedure to comply with the Fourth Amendment. *See id.* at 354-59.

In seeking a wiretap, the Government must follow a statutorily prescribed process. *See* 18 U.S.C. § 2510 *et seq.* First, an application for a wiretap order must be authorized by, *inter alia*, one of a limited number of Department of Justice (DOJ) officials. 18 U.S.C. § 2516(1).

The person authorized to apply must then make written application to a judge stating the applicant's authority to make the application. 18 U.S.C. § 2518(1). The application must include:

> (a) the identity of the investigative or law enforcement officer making the application, and the officer authorizing the application;
> (b) a full and complete statement of the facts and circumstances relied upon by the applicant, to justify his belief that an order should be issued . . . ;

(c) a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous;

(d) a statement of the period of time for which the interception is required to be maintained. If . . . the authorization for interception should not automatically terminate when the described type of communication has been first obtained, a particular description of facts establishing probable cause to believe that additional communications of the same type will occur thereafter;

(e) a full and complete statement of the facts concerning all previous applications known to the individual authorizing and making the application, made to any judge for authorization to intercept, or for approval of interceptions of, wire, oral, or electronic communications involving any of the same persons, facilities or places specified in the application, and the action taken by the judge on each such application; and

(f) where the application is for the extension of an order, a statement setting forth the results thus far obtained from the interception, or a reasonable explanation of the failure to obtain such results.

*Id.*

The judge may issue an order approving the interception if the judge determines from the facts submitted in the application: 1) there is probable cause to believe an individual is committing, has committed, or is about to commit a statutorily specified offense; 2) there is probable cause to believe communications regarding the offense will be intercepted; 3) normal investigative procedures have failed, are reasonably unlikely to succeed or are too dangerous; and 4) there is probable cause to believe the facilities or place from which the communications are to be intercepted are being used, or are about to be used, in connection with the offense, or are leased by, listed in the name of, or used by such a person. 18 U.S.C. § 2518(3). The order approving the interception must specify: 1) the person, if known, whose communications are being intercepted; 2) which facilities or what place is to be intercepted; 3) the type of communication to be intercepted, and the offense to which it relates; 4) the identities of the agency authorized to intercept, and the person who authorized the application; and (5) the period of time for which

interception is authorized, including whether interception automatically terminates when the communication sought is first encountered. 18 U.S.C. § 2518(4).

Intercepted communications are to be recorded if possible. 18 U.S.C. § 2518(8)(a). "Immediately upon the expiration of the period of the order [authorizing the wiretap], or extensions thereof, such recordings shall be made available to the judge issuing such order and sealed under his directions." *Id.*

The statutory scheme allows for suppression of communications and evidence derived therefrom when disclosure of the communications or evidence would violate the statute. 18 U.S.C. § 2515. An "aggrieved person" may move to suppress the intercepted communications or evidence on one of three grounds. 18 U.S.C. § 2518(10)(a). Those grounds are:

(i) the communication was unlawfully intercepted;
(ii) the order of authorization or approval under which it was intercepted is insufficient on its face; or
(iii) the interception was not made in conformity with the order of authorization or approval.

*Id.* An aggrieved person is defined as a party to an intercepted communication or a person against whom interception was directed. 18 U.S.C. § 2510(11).

Similarly, intercepted communications and evidence shall be suppressed if there is no proper seal and no explanation for the lack of such seal on recordings of the intercepted communications. 18 U.S.C. § 2518(8)(a). The statute provides: "[t]he remedies and sanctions described in this chapter with respect to the interception of electronic communications are the only judicial remedies and sanctions for nonconstitutional violations of this chapter involving such communications." 18 U.S.C. § 2518(10)(c).

## IV.    DISCUSSION AND ANALYSIS

In their motion to suppress, Defendants advance all materials, evidence, and fruits thereof obtained pursuant to the March, May, and June Orders should be suppressed.  Defendants advance five grounds in support of their motion.  Defendants first contend the March and May, 2017 applications (March application and May application, respectively) failed to comply with statutory procedural requirements.  Defendants next argue the Government's March application failed to show a wiretap was necessary.  Third, Defendants claim the March application lacked probable cause.  Defendants next aver the Government improperly minimized interceptions pursuant to the March and May Orders.  Finally, Defendants advance the recordings under the March and May Orders were improperly sealed.  At the motion hearing, Defendants withdrew their minimization argument.  Thus, four grounds remain in support of Defendant's motion to suppress: (1) the applications' non-compliance with required procedure; (2) lack of necessity for wiretap; (3) lack of probable cause; and (4) improper sealing.

Before analyzing these grounds, the Court holds Defendants all have standing to move for suppression.  The statute allows aggrieved persons to move to suppress intercepted communications or evidence derived therefrom, 18 U.S.C. § 2518(10)(a), and defines an aggrieved person as a party to an intercepted communication or a person against whom the interception was directed, 18 U.S.C. § 2510(11).  Defendants here were all either parties to intercepted communications or persons against whom the interceptions were directed.  *See, e.g.,* ECF No. 751 at 4-5 (indicating the Government's investigation had revealed several of the Defendants here and others as yet unknown were committing, and would continue to commit various drug offenses, use of communications facilities in furtherance of drug offenses, and money laundering offenses, and there was probable cause to believe at least some of them had committed, were committing, and

would continue to commit animal fighting offenses. The application also stated the communications sought to be intercepted would contain information regarding said offenses.) The issue of Defendants' standing to bring the instant motion was uncontested in briefing and at the motion hearing.

**A.      Ground One: Failure to Comply with Statutory Procedure**

In their first ground for suppression, Defendants advance the March and May applications both identify AUSA Jane B. Taylor (Taylor) as the official making the application, but in the space where Taylor's signature should go, the applications are signed by Bianchi with the notation "Bianchi for Taylor." Defendants concede both Taylor and Bianchi had authority to make the applications. However, Defendants contend, Bianchi may not swear under oath on behalf of Taylor. Because Bianchi did so, Defendants posit the March and May applications were inappropriate, and the resulting Orders that identify Taylor as the applicant were insufficient on their face. Thus, according to Defendants, the evidence derived from the wiretaps should be suppressed. The Government argues suppression is unwarranted as there is neither a Fourth Amendment nor a statutory violation. At the motion hearing, the parties agreed there was no case authority precisely on point with the instant situation.

Defendants are correct: Taylor was identified as the applicant in both the March and May applications and the resulting Orders, and both applications were signed by Bianchi with the notation "Bianchi for Taylor." However, the Court agrees with the Government suppression is unwarranted here. Defendants have failed to allege a Fourth Amendment violation. Rather, their argument is evidence should be suppressed because the applications and the resulting Orders violated statutory requirements. There is, however, no statutory violation here.

The statute provides for suppression if: 1) the communications are illegally intercepted; 2) the order authorizing interception is "insufficient on its face"; or (3) the interception does not conform to the order. 18 U.S.C. § 2518(10)(a). Suppression is thus based upon a failure in the interceptions or the order authorizing them, not upon an application which fails to comply with the statute. Assuming *arguendo* suppression was warranted where an application neglected to properly identify the official making the application under 18 U.S.C. § 2518(1)(a), it would be unwarranted here. Bianchi's affidavit indicates when he signed "Bianchi for Taylor," it "was not meant to imply that [he] was swearing on behalf of AUSA Taylor, but rather that [he] was replacing her as the signer of the application and swearing to the application on [his] own behalf" after having familiarized himself with the investigation, applications, and supporting affidavits.

Although suppression is warranted where a wiretap order is facially insufficient, 18 U.S.C. § 2518(10)(a)(ii), not all errors in a wiretap order render the order insufficient on its face. *See United States v. Chavez*, 416 U.S. 562, 573-74 (1974) (holding a wiretap order was not facially insufficient where the underlying application and resulting order incorrectly identified the DOJ official authorizing the wiretap, but both the official misidentified as authorizing the application and the official who authorized it could have properly done so). Further, the Orders at issue here are not insufficient on their faces. *See* 18 U.S.C. § 2518(4) (indicating the five requirements for a wiretap order, none of which are at issue here); *see also United States v. Scurry*, 821 F. 3d 1, 8 (D.C. Cir. 2016) (indicating facial sufficiency is judged by looking at the "four corners of the order" to determine whether the order contains all Title III requires, and pointing to 18 U.S.C. § 2518(4) as stating what a wiretap order must specify.). For those reasons, the Court will deny Defendants' motion to suppress as to their first ground.

**B.      Ground Two: Wiretap was Unnecessary**

In their second ground, Defendants argue the Government failed to show normal investigative procedures had failed prior to the March application or were reasonably unlikely to succeed or too dangerous. As a result, Defendants contend the March Order was unnecessary and the Court should suppress all subsequent evidence. In response, the Government argues the standard for necessity is low, and the Government met its burden to show the wiretap was necessary. The Court agrees with the Government.

Under the statute, a wiretap application must contain, *inter alia*, "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(1)(c). "The burden that this provision imposes on the Government, however, 'is not great, and the adequacy of such a showing is to be tested in a practical and commonsense fashion that does not hamper unduly the investigative powers of law enforcement agents.'" *United States v. Wilson*, 484 F.3d 267, 281 (4th Cir. 2007) (quoting *United States v. Smith*, 31 F.3d 1294, 1297 (4th Cir. 1994)). To meet the standard, "the Government 'need only present specific factual information sufficient to establish that it has encountered difficulties in penetrating the criminal enterprise or in gathering evidence [such that] wiretapping becomes reasonable.'" *Id.* (quoting *Smith*, 31 F.3d at 1298).

The lead law enforcement agent (lead agent) on the investigation submitted an affidavit in support of the March application (March affidavit). ECF No. 751 at 22-83. In the March affidavit, the lead agent identified the goals of the investigation as: 1) identifying the people involved in supplying and distributing narcotics; 2) identifying where narcotics were being stored; 3) identifying assets used in furtherance of narcotics activity; 4) identifying proceeds of illegal drug

trade, and how those proceeds were being used; and 5) gathering evidence to prosecute those involved in the criminal activity. *Id.* at 68-69.

The lead agent then provided extensive detail on alternative techniques that had been previously tried and failed, or which were reasonably unlikely to succeed or too dangerous. *Id.* at 69-80. Those techniques included physical surveillance, confidential sources, consensual monitoring, undercover agents, search warrants, interviews, pen registers and toll records, financial investigation, and prior wiretaps. *Id.* at 69-72, 73-80. The lead agent also discussed the decision not to use the grand jury at that point in the investigation. *Id.* at 72-73. The lead agent detailed why these alternative investigatory methods had either failed, or were unlikely, to meet the investigation's goals without the use of wiretaps, or were too risky. *Id.* at 69-80. Having reviewed the March affidavit, the Court holds the Government met its burden to show the necessity of the wiretap. Accordingly, the Court will deny Defendants' motion to suppress as to the second ground.

**C.      Ground Three: Wiretap was Unsupported by Probable Cause**

Defendants next argue the evidence in the March affidavit is stale, does not relate to Santerrio Smith, and/or is unreliable. Defendants thus advance the March Order was insufficient on its face and the Court should suppress any evidence obtained as a result. The Government refutes these arguments and asserts there was probable cause to support the wiretap.

For the judge reviewing a wiretap application to issue a wiretap order, she must determine, *inter alia*: (1) there is probable cause to believe an individual has committed, is committing, or is about to commit one of a number of statutorily enumerated offenses; and (2) there is probable cause to believe communications concerning the offense will be obtained via the wiretap. 18 U.S.C. §§ 2518(3)(a)-(b). The Government's burden to show such communications will be

intercepted is a low one; it need show only "a fair probability" of said interception. *United States v. Depew*, 932 F.2d 324, 327 (4th Cir. 1991). Because the judge reviewing the wiretap application and issuing the order is in the best position to determine whether there is probable cause to support the wiretap order, "[g]reat deference is normally paid to such a determination by the issuing judge . . . ." *Id.*

Here, the March affidavit provides extensive evidence of the Smith Brothers' involvement in drug trafficking, dog fighting, and related crimes. ECF No. 751 at 32-48. The evidence dates as early as 2007 and as late as February, 2017 – the month before the Government applied for the March Order. *Id.* The affidavit also details evidence from January and February, 2017, providing probable cause to believe communications regarding the offenses would be found on the telephones to be wiretapped. *Id.* at 48-65.

Although some of the evidence in the affidavit is older, "'[t]he vitality of probable cause cannot be quantified by simply counting the number of days between the occurrence of the facts supplied and the issuance of the affidavit.'" *United States v. McCall*, 740 F.2d 1331, 1336 (4th Cir. 1984) (quoting *United States v. Johnson*, 461 F.2d 285, 287 (10th Cir. 1972)). "Rather, we must look to all the facts and circumstances of the case, including the nature of the unlawful activity alleged, the length of the activity, and the nature of the property to be seized." *Id.*

In *United States v. Rhynes*, the Fourth Circuit analyzed, *inter alia*, staleness of evidence and probable cause underlying search warrants. *Rhynes*, 196 F.3d 207 (4th Cir. 1999), *vacated and remanded en banc on other grounds*, 218 F.3d 310 (4th Cir. 2000). In *Rhynes*, the search warrants were based upon drug trafficking and money laundering activities that occurred at least two years before the Government applied for the warrants. 196 F.3d at 233. In holding there was probable cause to support the warrants, the Fourth Circuit noted:

> [i]n the instant case, the nature of the activities alleged were long-term drug trafficking and money laundering, supported and aided by the operation of seemingly legitimate businesses through which the defendant laundered proceeds and facilitated the distribution of illegal drugs. Moreover, the length of the alleged activity was more than two decades, a decidedly long time for which defendant was accused of engaging in a criminal enterprise.

*Rhynes*, 196 F.3d at 234. Likewise, here there was evidence Defendants had been engaged in drug-trafficking and related crimes for at least one decade.

In addition to the long-term nature of Defendants' involvement in the alleged crimes, the March affidavit contained evidence from approximately one month before the March, 2017 application was made showing the alleged criminal activities were continuing. Further, the March affidavit provided evidence tending to show there would be communications regarding these activities on the telephones to be targeted. Thus, in the instant case, there was reason to believe criminal activities were ongoing and communications regarding those activities would be found on the telephones to be intercepted. *See id.* (noting a key issue in deciding staleness and thus probable cause is whether there is probable cause at the time an order is issued to believe the evidence sought will be found). Accordingly, the Court holds the evidence here was reliable, relevant, and not stale, and the March application and resulting Order were supported by probable cause. For those reasons, the Court will deny Defendants' motion to suppress as to their third ground.

**D.     Ground Four: Recordings were Improperly Sealed**

In their fourth ground in support of suppression, Defendants make arguments concerning both traditional and non-traditional telephony. Regarding traditional telephony, Defendants advance recordings of Target Phones 2 and 3 should have been sealed during the nine days between the expiration of the March Order and the signing of the May Order. Because the recordings were left unsealed during that period, suppression is warranted. Even if sealing was not required during

those nine days, Defendants posit the evidence should be suppressed if the Government fails to satisfactorily explain the delay in seeking reauthorization of the wiretap on Target Phones 2 and 3. Finally, Defendants aver the nine-day delay in sealing recordings from Target Phones 2 and 3 after the expiration of the May Order should result in suppression of the wiretap evidence.

Regarding non-traditional telephony, Defendants argue delays in sealing non-traditional telephony should lead to suppression of all wiretap evidence from Target Phones 2 and 3, and any Target Phone 1 conversations in which Santerrio Smith participated. Dunlap further advances the evidence provided regarding sealing is insufficient for the Court to determine if the delays in sealing were reasonable.

The Government concedes it failed to seal the traditional recordings immediately. It advances, however, the May Order was either an extension of the March Order such that sealing was not required, or the delay in seeking reauthorization of the Target Phone 2 and 3 wiretaps was reasonable. The Government further contends the nine-day delay in sealing following the expiration of the May Order was reasonable. It notes it does not seek to admit the non-traditional telephony evidence at trial, so the motion to suppress is moot as to that evidence, and there is no basis to suppress the traditional telephony based on delays in sealing the non-traditional telephony.

The statutory scheme recommends recording the intercepted communications, and requires sealing the recordings "[i]mmediately upon the expiration of the period of the order, or extensions thereof . . . ." 18 U.S.C. § 2518(8)(a). If the seal required is not present, or if there is not a "satisfactory explanation" for its absence, the recordings may not be used as evidence. *Id.* The requirement to seal recordings or satisfactorily explain the lack of a seal also applies to a delay in sealing. *United States v. Ojeda Rios*, 495 U.S. 257, 264 (1990). To admit recordings where there

has been a delay in sealing, the Government must explain: 1) why a delay occurred; and 2) why the delay is excusable. *Id.* at 265.

In deciding whether the Government's explanation for a delay in sealing is acceptable, Circuit Courts of Appeals have noted a variety of factors the Court considers, including:

> the length of the delay; the amount of time needed to prepare the tapes for sealing; the diligence of law enforcement personnel in performing the necessary pre-presentment tasks; the foreseeability and urgency of circumstances diverting the attention and energies of those responsible for the presentation of the tapes to other matters; evidence of any tampering with the tapes or of any other prejudice to the defendants; and any evidence of bad faith on the part of law enforcement agencies, such as "any intent to evade statutory sealing requirements or to gain tactical advantage."

*United States v. Rodriguez*, 786 F.2d 472, 477 (2d Cir. 1986) (citations omitted); *see also United States v. Diana*, 605 F.2d 1307, 1314 (4th Cir. 1979) (holding the Court should inquire into the integrity of the recordings in deciding whether the Government's explanation for a delay in sealing is satisfactory); United *States v. Rodrigues*, 850 F.3d 1, 12 (1st Cir. 2017) (same).

As a preliminary matter, the Court agrees with the Government regarding the non-traditional telephony. As the Government explained at the motion hearing and in briefing, the discs of non-traditional telephony contain nothing but computer-generated data, and nothing of evidentiary value. The Government averred it would not introduce the non-traditional telephony as evidence at trial. The statute excludes improperly sealed recordings from being introduced as evidence. 18 U.S.C. § 2518(8)(a). Here, the Government does not seek to introduce the non-traditional telephony as evidence; thus, Defendants' request to suppress the non-traditional telephony is moot. Further, to the extent Defendants seek to suppress traditional telephony evidence based upon alleged sealing violations as to the non-traditional telephony, there is no support for such suppression. Suppression of a recording or "evidence derived therefrom" is

warranted where there is a sealing issue with the recording – here with the traditional telephony, not with a different recording – here the non-traditional telephony. *See* 18 U.S.C. § 2518(8)(a).

As to Defendants' argument the wiretap evidence should be suppressed because of the failure to seal the recordings of Target Phones 2 and 3 between the expiration of the March Order and the signing of the May Order, the Court first notes the May Order appears to be simply an extension of the March Order as to Target Phones 2 and 3. The caption and language of the May Order indicate it is an order authorizing continued interception of Target Phones 2 and 3. ECF No. 751-1 at 65-78. Assuming without deciding the May Order is an extension of the March Order as to Target Phones 2 and 3, sealing would not be required during the lapse between the expiration of the March Order and the signing of the May Order. 18 U.S.C. § 2518(8)(a) (requiring sealing of recordings "[i]mmediately upon the expiration of the period of the [wiretap] order, *or extensions thereof*") (emphasis added).

The Court further holds the Government has adequately explained the nine-day delay in seeking reauthorization of the wiretaps on Target Phones 2 and 3 between the expiration of the March Order and the signing of the May Order. The Government first sought authorization from the DOJ to extend the wiretaps on Target Phones 2 and 3 on April 25, 2017, four days before the March Order expired. ECF Nos. 750 at 38, 750-7. Although the DOJ reviewer originally advised the DOJ would try to get reauthorization approved before the March Order expired, on April 28, 2017, the reviewer updated the Government reauthorization would not be approved before the March Order expired, but he hoped reauthorization would be approved by Tuesday, May 2. ECF Nos. 750 at 38, 750-8. On Tuesday, May 2, 2017, the reviewer advised he was working on the Government's request. ECF Nos. 750 at 38, 750-9. The DOJ ultimately approved the Government's request for authorization to extend the wiretaps on May 8, 2017, ECF Nos. 750 at

38, 750-10; the Court signed the May Order the same day, ECF No. 751-1 at 65-78. The Government thus originally sought reauthorization before the March Order expired, maintained contact with the DOJ reviewer, and thought it was about to get authority to seek an extension of the wiretaps throughout the period between April 29, 2017 and May 8, 2017. Under those circumstances, the Court holds the Government has satisfactorily explained the delay in seeking reauthorization. The Court further notes counsel for Santerrio Smith conceded at the motion hearing the Government's explanation for this delay was valid.

The Court likewise holds the Government has satisfactorily explained the nine-day delay between the expiration of the May Order and the sealing of recordings of Target Phones 2 and 3. For the Government's explanation to be satisfactory, the Government must explain both why a delay occurred, and why the delay is excusable. *Ojeda Rios*, 495 U.S. at 265. The Court looks at a variety of factors to determine whether the Government's explanation for the delay in sealing is acceptable. *Rodriguez*, 786 F.2d at 477; *Diana*, 605 F.2d at 1314; *Rodrigues*, 850 F.3d at 12.

In the instant case, the May Order expired June 6, 2017. The Government explained the following day, technicians in Atlanta, Georgia where the recordings were physically made removed the recordings from the machine and sent them to law enforcement in Columbia, South Carolina where they were received the next day. ECF No. 750 at 40. The lead agent stated in an affidavit when such discs are removed from the machine, they are write-protected to protect the information on the discs from being altered, stored within electronic evidence envelopes, and shipped to the receiving office, where they are stored in secure evidence storage until the appointment with the reviewing judge. ECF No. 750-6 at 4.

On June 8, 2017, the same day the recordings were received in Columbia, law enforcement intercepted communications indicating one of the targets of the investigation was trying to hire a

hitman to kill a drug customer who had stolen heroin, and the murder was scheduled for the evening of Friday, June 9, 2017. ECF No. 750 at 40-41. After contacting Taylor, the lead agent began immediately working with other law enforcement agents to help prevent the murder. *Id.* at 41. On Friday, June 9, 2017, the lead agent and other law enforcement agents travelled to Marion, South Carolina to locate both the potential victim and the hitman. *Id.* At approximately 4:35 a.m. the following morning, agents located the victim and the hitman, thus preventing the murder. *Id.*

The following Monday, June 12, 2017, the lead agent reviewed the recordings and emailed Taylor regarding what was on each disc. ECF Nos. 750 at 41, 750-11. Later that afternoon, Taylor emailed chambers for the reviewing judge to advise her of the forthcoming motion to seal and sealing order, and to inquire about the judge's schedule to meet regarding the motion to seal. ECF Nos. 750 at 41, 750-12. The following day, Taylor sent copies of the sealing application and order to the reviewing judge's chambers; the same day, law enforcement agents sent the discs to the reviewing judge, who was located in another city, via overnight FedEx. ECF No. 750 at 41. On June 14, 2017, the judge's chambers advised Taylor the judge could meet to review the motion to seal on June 16, 2017. ECF Nos. 750 at 41-42, 750-13. The recordings were sealed on June 16, 2017.

The Government delayed nine days between the expiration of the May Order and the sealing of the recordings from Target Phones 2 and 3. However, under the circumstances, the Government has provided a satisfactory explanation for the delay. First, the integrity of the recordings was protected. Further, although the recordings arrived in Columbia on June 8, 2017, unforeseeable urgent circumstances in the form of a possible murder presented themselves and diverted the energy and attention of the lead agent away from the instant case. On the first weekday following the thwarting of the possible murder, the lead agent proceeded to prepare the recordings

for presentment to the judge. *See United States v. Wong*, 40 F.3d 1347, 1375 (2d Cir. 1994) (indicating weekends can be a valid obstacle to sealing recordings). The materials needed were promptly prepared, sent to the judge in another city, and a meeting was set up with the judge as soon as possible to review the motion to seal. *See United States v. McGuire*, 307 F.3d 1192, 1204 (9th Cir. 2002) (holding the out-of-district location of the judge overseeing the wiretap explained many of the delays in sealing wiretap recordings, and using the judge's location*, inter alia*, to hold the Government satisfactorily explained the delay in sealing); *United States v. Pedroni*, 958 F.2d 262, 266 (9th Cir. 1992) ("[t]he unavailability of the issuing or supervising judge may constitute a satisfactory explanation for a sealing delay.")

Further, there is no indication of bad faith on the part of law enforcement in delaying the sealing of the recordings. Accordingly, the Court holds suppression is not warranted in this case. *See Diana*, 605 F.2d 1307, 1310-16 (finding no error where district court held the Government satisfactorily explained a thirty-nine day delay in sealing wiretap recordings). The Court also notes at the motion hearing counsel for Santerrio Smith conceded the Government provided a valid explanation for this delay. For the above reasons, the Court will deny Defendants' motion to suppress based upon allegedly improper sealing of recordings.


V.      **CONCLUSION**

Wherefore, based on the foregoing discussion and analysis, it is the judgment of the Court Defendants' motion to suppress is **DENIED**.

**IT IS SO ORDERED.**

Signed this 14th day of January, 2019, in Columbia, South Carolina.

s/ Mary Geiger Lewis
MARY GEIGER LEWIS
UNITED STATES DISTRICT JUDGE